The next case is People v. Vela. May it please the court. My name is Amanda Horner from the Office of the State Appellate Defender and I also represent Mr. Eduardo Vela. Your Honor, the state failed to prove Mr. Vela guilty beyond a reasonable doubt of delivery of cannabis, where they failed to show that Mr. Vela ever possessed the cannabis. Second, the trough were earned in this case by failing to give the jury a definition instruction on what possession meant when constructive possession was at issue, not just physical possession or actual possession. And then finally, Your Honor, Mr. Vela was denied a fair trial where a juror indicated to the trial court that he was unable to reach a verdict because he missed portions of the trial and couldn't concentrate. And rather than reopening up Verdera or using an alternate juror, or as the defense counsel suggested, declaring a mistrial, the trial court simply said he wasn't going to blow four days of his life and forced the jury to continue deliberating. First, Your Honors, in order to prove Mr. Vela guilty of delivery beyond a reasonable doubt, the state had to show that Mr. Vela possessed the cannabis. Delivery is defined as the transfer of possession of cannabis. And in fact, that is how the jury was instructed, that they must find that Mr. Vela transferred the possession. However, according to People v. Fox, for Mr. Vela to possess the cannabis either actually or constructively, the cannabis must have first been in his possession. Even under constructive possession, at one time, Mr. Vela must have had the cannabis and then later transferred that, had control over the cannabis even though it was no longer in physical proximity to him. But the record indicates that Mr. Vela never physically possessed the cannabis at any time. In fact, defense counsel argues that Mr. Vela was much more of a sales representative, if you will, and he passed along messages between different parties. Now, that would certainly be sufficient to find Mr. Vela guilty of a number of offenses, conspiracy, for example, or some other derivative offense like accountability. But the state argued that Mr. Vela was the principal. They charged him as the principal, and the jury was instructed in such a manner. So, in order to find that Mr. Vela delivered cannabis, the state had to prove that he possessed the cannabis, and the state simply couldn't show that. Cannabis arrived in the mail and was delivered to a confidential source that the police had. The envelopes that were received in the mail didn't have Mr. Vela's name on it or his address. In fact, the record reveals that Mr. Vela never sent them, and the state acknowledges that, that someone in his family placed the cannabis in the mail at the post office. Most tellingly, Your Honors, is that Mr. Vela didn't know how much cannabis was actually in the envelopes that were being sent through the mail. Once the confidential source received the cannabis, he required them to weigh it and report back to him so that he could determine a price. Surely, if Mr. Vela knew how much cannabis was in the package because he sent it, he would certainly have known how much to charge and would not have required the confidential source to weigh it and report back to him. Without proving possession, the state simply couldn't prove that Mr. Vela delivered the cannabis. And even though Mr. Vela is certainly guilty of something, he's not guilty with what the state charged him of, and therefore the state failed to prove Mr. Vela guilty and his conviction should be reversed. Alternatively, Your Honor, Mr. Vela was also denied a fair trial where the trial court was not properly instructed on what it meant to possess cannabis. As we've already discussed, possession was certainly an issue at this trial. The state never argued that he had actual possession, only constructive possession. And the primary instruction given to the jury was that the delivery of cannabis meant the transfer of possession. So defense counsel, in accordance with the committee instructions for the Illinois Pattern Instructions, requested that IPI 4.16 be given to the jury. Now Illinois IPI 4.16 defines possession. It doesn't add additional instructions, it doesn't discuss lesser offenses. It simply explains to the jury what actual and constructive possession is. And that's important because while a jury may be able to use their natural understanding and their common sense for actual possession, constructive possession may be outside of their knowledge. Defense counsel simply wanted this clarified for the jury. When the trial court looked over Illinois Pattern Instruction 4.16, it determined that possession was not an issue here. But it erroneously arrived at this issue because instead of looking at 17.05a, which was the instruction being given to the jury that noted delivery included possession, it inadvertently looked at another instruction which did not include the word possession in it. Therefore, the trial court erroneously concluded that possession was not an issue here. We're not sure how the trial court would have ruled had it actually looked at the appropriate instruction. But certainly the committee notes that a company 17.05a suggests that this instruction should be given when there is an issue regarding constructive possession. Mr. Buell has a right to have the jury properly instructed. And in this case, whether or not he possessed cannabis was crucial. Further, this instruction would have allowed trial counsel to have argued that to constructively possess cannabis, he must also physically possess cannabis. This instruction is crucial for the jury. And the trial court's refusal to give the instruction denied Mr. Buell his right to a fair trial. Perhaps most interestingly in this case, however, is that once the instructions were given and once the jury retired to deliberate, in 20 minutes, the trial court received a note from the jury foreman. And this note said that everyone had reached a verdict except one juror who could not come to a verdict. And the reason he couldn't come to this verdict was because he couldn't concentrate and he couldn't hear. Now, this case was filled with multiple overhears and lots of audio testimony. So the trial court had instructed the jury that if it had trouble listening, it needed to indicate that to the judge. But in any event, the jury, this particular juror, apparently failed to concentrate, couldn't hear. And once it came time to actually render a verdict, he was unable to do so. This was brought to the trial court's attention less than 20 minutes after deliberations had started. Now, the trial court had any number of avenues before it that could have solved this problem. It could have reopened your diary and talked to the juror, found out what the juror thought he had missed. It could have, 20 minutes into the process, substituted an alternate, which would not have been prejudicial to the deliberations or taken that much longer, given that we were only 20 minutes into the process. There was an alternate juror that was there. I believe there was one alternate, yes. And that alternate could have been called and it could have been replaced with the juror who couldn't concentrate and couldn't hear. Defense counsel made a motion at this point for mistrial, which was the third option that was before the trial court. But instead of taking any of these remedial measures, the trial court simply said, look, I'm not blowing four days of my life after 20 minutes of deliberations. And it forced the jury to continue to deliberate. Later, the jury asked for more evidence. They wanted to see Mr. Vila's confession, which incidentally supports the idea that Mr. Vila never had the cannabis. He said, I never had it in my possession. I merely passed along messages. But they asked to see this confession. And of course, the trial court refused to send it back to them. So the jurors were simply forced to continue deliberating, even though they had already complained to the jury or to the trial court that one of the jurors wasn't able to reach a decision. The defense actually made a motion for a mistrial rather than substituting. He did not make a motion for a substitution for an alternative juror, Your Honor. He could have if he wanted to. But when you read through the transcript, the trial court was very firm. As soon as he made that motion, the trial court was like, look, I'm not blowing four days of my life on this. They barely started deliberating. The interesting thing is, no amount of deliberation would have allowed the juror to recapture testimony that he missed. And if he said he missed such a substantial portion that he was not able to reach a verdict, no amount of sitting in a jury room would have allowed him to be able to do that. Was a note given back to the jury? It was. It told him to continue to deliberate. That was it? That was it. It told him to continue to deliberate. There are several cases that discuss what happens when a juror falls asleep. I think in one case a juror cried throughout the entire trial where jurors have problems. And in those cases, the juror's inattentiveness or sleepiness or overemotion was not brought to the trial court's attention until either a post-trial motion or it was brought up for the first time on appeal. And in those cases, the court found that the defendant had waived that because the trial court had no opportunity to remedy the situation. But the opposite is true here. This was definitely brought to the trial court's attention by the juror himself. Now, the state argues that the trial court paid particular attention to this jury, that it instructed the jury that if they couldn't hear, they should raise their hand. So the trial court is in the best position to know whether or not the jury paid attention and to make that judgment call. To be honest, that may not be true, but I find it hard to argue that the trial court is in a better position to know whether someone was listening and concentrating than that person himself. I mean, the jury himself said that he was unable to concentrate and that he couldn't reach a verdict. Now, you may be able to tell that a juror is sleeping when you look at them, and you may be able to tell a juror is crying, but it's hard to know just by looking at a juror whether or not they're hearing or concentrating on material. And so when a juror tells you that he is not able to concentrate or he couldn't hear, then we have to take that juror at his word. And the trial court had many avenues before that it could have rectified this problem. Your Honor, counsel, as to the first issue, what are the elements of delivery? This court has decided in Lewis that there are separate crimes, that delivery is not the crime of possession with intent to deliver. And this court's decision in Lewis was referred to by the Illinois Supreme Court, which recognized that these are different crimes. So what are the elements of delivery? The statute says delivery means the actual constructed or attempted transfer of possession of cannabis, with or without consideration or whether or not there's an agency relationship. The essence of delivery is the transfer of possession, but that doesn't require that the person who does the transfer actually possess the cannabis. It includes the person who is the broker. If you look at the intent of the General Assembly in enacting this statute, it meant to respond to cannabis and to direct, I'm quoting, direct the greatest efforts of law enforcement agencies toward the commercial traffickers and the large scale purveyors of cannabis. So what the legislature meant to target was all encompassing, the possession with the intent to deliver and the delivery itself. Delivery being usually the person who possesses the cannabis also accomplishes the delivery. But it is not necessary that the person who arranges for the transfer of the possession of cannabis actually possess it. This is the commercial seller that the legislature meant to target. They may keep their hands ever so clean, but they are arranging for, they are brokering the transfer of possession of cannabis and they are guilty of the crime of delivery, even though they may never possess it. So the court below is correct in saying that possession is not at issue in this particular case. Now the defendant himself in his statement confessed to being a broker of cannabis. He says, I haven't sent nothing to, somebody else does it. And he also says, honestly, somebody else does it for me. And yes, I was aware of it. And he explains that his aunt who works for the post office helps him out. And then he also says, if you want a delivery here, I can arrange it. So the defendant is talking about being a broker who transfers the possession of cannabis to others, arranges it. What about the jury? That that problem with the juror, they couldn't hear. Go to that part. Context is important in this case. The jury, the judge prior to trial, they knew there would be multiple overhears and recorded conversations that were going to be played. Some of them are not of the greatest quality. And the court knew that the jury was going to need to pay attention. So the court instructed the jury, I want to explain to you there's a likelihood you may hear recordings in this case over the next couple of days. And then he goes, I'll skip. He says, if you cannot hear these recordings, you need to advise me at that time because you're going to listen to these recordings only in the courtroom and they're not going back to the jury room. That was prior to trial. Then, before the playing of People's Exhibit 5, the court re-admonished the jury, listen carefully. Raise a hand if you can't hear because it's going to be played here in the courtroom and it's not going to be played at a later time. Why would the judge do that? They want to hear again. I'm sorry. Why would the judge not allow them just one time at the trial? Because the defendant's counsel objected to them going back. The people did not. Because the defendant's counsel did not want these recordings to be overemphasized. That's why they didn't go back. Was the alternate juror discharged before deliberations? Was there an alternate available? There was an alternate and I'm not sure. There's things I know that are outside of the record and I don't want to go beyond it. But I think the juror was discharged prior to the deliberations. But the salient point is that the defense counsel acquiesced in every way, and agreed with, in every way in which the court handled the notes from the jury. And only he did not hear them one time. And hear the telephone over here just one time in the trial is what the defendant says. There were multiple ones. When the jury sent back a note, there were two notes. The second note requested a particular recording, which was the recording of the defendant's statement. And the people said, we have no objection, it can go back. The defense counsel said, no, I don't want this overemphasized, don't want it sent back. And so the one recording that the jury wanted to hear, it was defense counsel that barred it going back. And it was defense counsel knowing that the prior note had said that there was one juror who claims he could not hear, and who said his concentration was not so good. But the trial judge did not have the tape back to the jury? The one that they requested, that did not go back because defense counsel objected. Okay? So, you know, anyway, the jury was admonished multiple times to listen carefully. The court indicates that he watched them carefully to see if they were paying attention. And what happened was a few minutes, probably seven to ten minutes after the jury retired to deliberate, apparently they made some comment to the bailiff who contacted the judge. And the judge says, I will not entertain anything but a note from the jury. So 22 minutes after they began to deliberate, that's when they sent out the note. The first note said, and this is 22 minutes after deliberation starts, and very short time, hardly enough time to elect a foreman. We, the jury, all agree on the verdict except for one juror, number four, who missed part of the trial because he couldn't hear. And his concentration wasn't good. That was the note. While they were talking about how to respond to this note, and while the judge was saying, I'm not willing to give you a hung jury at this point, they haven't been deliberating long enough, then the jury sent out a second note. The first note was received at 527. At 540, before the court could make a response, the jury sent out the second note, basically clarifying that this is the information that we wanted to listen to. And that was the defendant's confession about being the broker and talking about how he had sent X amount of cannabis on three or four occasions and other occasions to various people who testified at the trial. So at 547, they, the court, with, you know, counsel's agreement, just instructed the jury to continue deliberating that they had the evidence that they were going to get. And that was at 547. Apparently, the jury began to deliberate just a little bit before 5 o'clock. If you, it's hard to reconstruct, but that's the best I can, as best I can tell. So at 620, the judge asked the jury if they would like pizza, and they all agreed they did. And then sometime after that, it's not known how much longer, but not much longer, the jury delivered a verdict. The jury was polled. I mean, if this one juror had a real problem and really could not come up with a verdict, he could have held up. He was not coerced. And just within a short time, there is a verdict. The jury was polled, and every one of them said, this was my verdict. So the error here is hard to find. I'm just ready for the questions. Thank you. Your Honor, the defense counsel did object as to whether or not Mr. Fila's statement should be sent back to the jury, but with good reason. At this point, they were already aware that there was one juror who obviously couldn't hear or couldn't concentrate. There was problems with one. Could he enlist it again and the jury would be better? We're not sure what the problem was, Your Honor, and that's part of this. Had the trial court called in this juror, then we might have figured out that this was the only video he missed. However, you can't listen to evidence for the very first time in the jury room, and there's a lot of reasons for that. First, there's so much you absorb in the courtroom while sitting in the juror that you just don't get when you're actually in the jury room and listening to evidence for the very first time. But second, we're not sure that this was the only recording that the juror didn't because the trial court never called the jury in, never called this particular juror in and asked him or her what information he or she was missing. Second, yes, the trial court or the jury did eventually reach a verdict, but only after the trial court told them they had to. Even after they complained and even after they asked for a piece of evidence, the trial court essentially said, continue deliberating, so the jury had to reach a verdict. Now, the jury could have held out forever, I suppose, but when you've told the trial court that you didn't hear part of the trial, that you can't reach a verdict, I'm not sure what else the juror was supposed to do other than come to a verdict based on what his fellow jurors might have said to him. Finally, Your Honor, the defense counsel didn't acquiesce. He made a motion that he thought would take care of the problem. And the trial court didn't say, look, we're not going to do it at this point. It's too soon. The trial court was very firm. I'm not blowing four days of my life. They need to continue deliberating, Your Honors. The defense counsel followed this up in a post-trial motion. I mean, this is a preserved error. I'm not sure what else the defense counsel should have done that would have further preserved this error for the record. He made his objection. He made his motion. And then after the trial court made clear that he had ruled, he followed a post-trial motion that further preserved this error. Therefore, Your Honor, Mr. Vila respectfully requests that this court reverse his conviction and remand his case for a new trial. Thank you.